No. 98-590

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 274

296 Mont. 503

989 P.2d 836

STATE OF MONTANA,

Plaintiff and Respondent,

v.

MELVIN WEASELBOY, JR.,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Maurice R. Colberg, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gary E. Wilcox, Attorney at Law, Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General; Helena, Montana

Dennis Paxinos, Yellowstone County Attorney; Billings, Montana

For Amicus:

Kevin Peterson, Yellowstone County Defenders Office, Billings, Montana

Submitted on Briefs: September 2, 1999

Decided: November 16, 1999

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶ **Melvin Weaselboy (Weaselboy) appeals from the judgment of the Thirteenth**

Judicial District Court, Yellowstone County, denying his motion to suppress evidence.

¶ We affirm.

¶ We restate the issues as follows:

¶ 1. Whether Weaselboy preserved his objection to a dog's "free-sniff" of his car.

¶ 2. Whether the District Court erred in concluding that the warrantless seizure of drugs from Weaselboy's car met the requirements of the plain view doctrine.

## Standard of Review

¶ We review a district court's denial of a motion to suppress evidence "to determine whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law." State v. Stucker, 1999 MT 14, ¶ 31, 293 Mont. 123, ¶ 31, 973 P.2d 835, ¶ 31.

## Factual and Procedural Background

¶ Late one evening in July, 1997 two Billings police officers saw Weaselboy drive through a red light. The officers activated their car's flashing lights and pursued Weaselboy. Six blocks after the start of the chase, Weaselboy finally stopped his car in the middle of a road in a construction zone near a barricade. Officer Walters went to Weaselboy's car and asked him for proof of insurance and his driver's license. Weaselboy told Officer Walters that he did not have his license but gave him proof of insurance and registration and threw his wallet down near the car's console. Officer Walters returned to his car, called police dispatch, and determined that there was an outstanding warrant for Weaselboy's arrest on the charge of felony assault. Officer Walters returned to Weaselboy's car and told him that there was an outstanding warrant and asked Weaselboy to get out of the car. Appearing nervous, Weaselboy emerged from his car, left his keys in the ignition, and locked and closed the driver's side door. Officer Walters arrested Weaselboy and placed him in Officer Walters' car.

¶ Suspecting that Weaselboy's conduct meant that he was concealing drugs in his car, Officer Walters radioed for the assistance of a canine officer. Canine Officer Lamb and his partner, Tico, responded to the scene. Officer Lamb commanded Tico to perform a "free sniff" around the exterior of Weaselboy's car (hereafter, Tico's

free-sniff). Tico, trained and certified in the detection of illegal drugs, made "aggressive indications" by the driver's and passenger's doors that Officer Lamb recognized as signals for the presence of illegal drugs. Officer Lamb so advised Officer Walters.

¶ Because Weaselboy had locked his keys inside his car, Officer Walters assumed that he would have to summon a tow truck to move the car off the road. However, Officer Lamb discovered that the passenger side door was unlocked. Without Weaselboy's consent, Officer Walters opened the passenger side door to retrieve Weaselboy's keys from the ignition. In opening the door and retrieving the car keys, Officer Walters observed several plastic baggies in plain view on the floor of the car. Officer Walters removed the baggies; they each contained yellow rock-like substances that he believed to be methamphetamine.

¶ Weaselboy moved to suppress the evidence obtained from his car. However, his counsel stated during the suppression hearing that he did not believe that Tico's free-sniff was a search. The District Court denied Weaselboy's motion to suppress. The District Court determined that the police officers had a particularized suspicion to stop Weaselboy after he ran the red light and that Tico's free-sniff was not a search. The District Court further concluded that probable cause arose when Tico signaled the presence of drugs in the car. Finally, the District Court concluded that the warrantless seizure of drugs from Weaselboy's car was justified under the automotive and plain view exceptions to the Fourth Amendment's requirement of a warrant for a search.

¶ Weaselboy pled guilty to Criminal Possession of Dangerous Drugs (felony) but reserved his right to appeal the District Court's denial of his suppression motion. In June, 1998 Weaselboy was sentenced to five years prison with all five years suspended. Weaselboy was placed on probation concurrent with a sentence that he received in another criminal case. Weaselboy appeals from the District Court's order denying his motion to suppress.

## Discussion

¶ Weaselboy concedes that at the suppression hearing, his counsel opined that Tico's free-sniff was not a search. However, Weaselboy argues that his counsel's failure to object did not prevent the District Court from fully considering the issue. Weaselboy urges that this Court can hear the issue under §§ 46-20-104 and 46-20-701, MCA;

however, he does not explain how those statutory provisions apply in the present case. Weaselboy also argues that this Court can hear the issue under the doctrine of plain error.

¶ The State responds that Weaselboy failed to preserve this issue, that he does not meet the requirements under §§ 46-20-104 and 46-20-701, MCA, and that the doctrine of plain error should not apply because this Court's failure to review the alleged error would not result in a "fundamental miscarriage of justice."

¶ Section 46-20-104, MCA, provides:

> **Scope of appeal by defendant.** (1) An appeal may be taken by the defendant only from a final judgment of conviction and orders after judgment which affect the substantial rights of the defendant.
>
> (2) Upon appeal from a judgment, the court may review the verdict or decision and any alleged error objected to which involves the merits or necessarily affects the judgment. Failure to make a timely objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2).

¶ Section 46-20-701(2), MCA, provides in part that

> (2) Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. A claim alleging an error affecting jurisdictional or constitutional rights may not be noticed on appeal if the alleged error was not objected to as provided in 46-20-104, unless the convicted person establishes that the error was prejudicial as to the convicted person's guilt or punishment and that:
>
> (a) the right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application;
>
> (b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the convicted person or the convicted person's attorney that prevented the claim from being raised and disposed of; or
>
> (c) material and controlling facts upon which the claim is predicated were not known to the convicted person or the convicted person's attorney and could not have been ascertained by the exercise of reasonable diligence.

¶ We hold that Weaselboy failed to preserve his objection to Tico's free-sniff. The

rule is well established that "this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory." Unified Industries, Inc. v. Easley, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15 (citation omitted). Moreover, Weaselboy has not alleged any of the grounds recognized under § 46-20-701, MCA.

¶ Finally, Weaselboy has made no showing that he should benefit from a "plain error" review of his belated objection to Tico's free-sniff. In State v. Finley (1996), 276 Mont. 126, 915 P.2d 208, we held that

> this Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made and notwithstanding the applicability of the § 46-20-701(2), MCA, criteria, where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.

*Finley*, 276 Mont. at 137, 915 P.2d at 215. We conclude that *Finley* has no application in the present case. Because our holding that Weaselboy did not preserve his objection to Tico's free-sniff is dispositive, we do not address Weaselboy's arguments concerning whether Tico's free-sniff was a search and whether the police had particularized suspicion to search his car.

¶ 2. Whether the District Court erred in concluding that the warrantless seizure of drugs from Weaselboy's car met the requirements of the plain view doctrine.

¶ Weaselboy argues that the District Court erred in concluding that the plain view doctrine applies in the present case. Weaselboy asserts that the testimonies of Officers Walters and Lamb "are both internally inconsistent and inherently unreliable" regarding the baggies found in his car. Weaselboy suggests further that it is "inconceivable" that an officer with a suspicion that a car has drugs would enter the car "merely" to retrieve the car keys. Finally, Weaselboy argues that the baggies were not in "plain view" and that when Officer Walters retrieved the car keys, he did not need to enter the car "far enough so that a view could be had of the area under the seat or between the seat and the console."

¶ The State responds that the warrantless seizure of drugs from Weaselboy's car was justified under the plain view doctrine. The State notes that Weaselboy does not dispute that the officers were entitled to enter the vehicle to remove the keys. Further, the State argues that the District Court's findings regarding the motives of

the officers in entering the car are not clearly erroneous and that determinations about the credibility of testimony are within the discretion of a district court.

¶ Warrantless searches are "per se unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585. Section 46-5-101, MCA, provides:

> **Searches and seizures--when authorized.** A search of a person, object, or place may be made and evidence, contraband, and persons may be seized in accordance with Title 46 when a search is made:
>
> (1) by the authority of a search warrant; or
>
> (2) in accordance with judicially recognized exceptions to the warrant requirement.

Section 46-5-101, MCA.

¶ One exception to the warrant requirement is the plain view doctrine. Under the plain view doctrine, peace officers may in certain circumstances seize evidence in plain view without a warrant. *See* State v. Loh (1996), 275 Mont. 460, 468, 914 P.2d 592, 597.

¶ In *Loh*, this Court adopted the plain view doctrine as set forth in Horton v. California (1990), 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112. The *Loh* Court concluded:

> The essential predicate to any valid warrantless seizure of incriminating evidence is that the officer must be lawfully at the place from which he could plainly view the evidence. In other words, his initial entry onto or intrusion into the place where he views the evidence must not have been in violation of the Fourth Amendment or in violation of Article II, section 11 of Montana's Constitution. In addition, there are two conditions that must be satisfied to justify the warrantless seizure under the plain view doctrine. First, the item must be in plain view and its incriminating character be "immediately apparent." Second, not only must the officer be lawfully located in a place from which the object can be plainly seen but he or she must also have a lawful right of access to the object itself.

*Loh*, 275 Mont. at 473, 914 P.2d at 600.

¶ We consider each one of *Loh's* requirements in the present case. First, Weaselboy does not

dispute that when the police entered his car to retrieve the keys, they were lawfully in the car. Weaselboy suggests, however, that the real purpose of the officers was to look for drugs, not to retrieve the keys. We have previously concluded that "[t]he weight of evidence and the credibility of witnesses are exclusively within the province of the trier of fact." State v. Doyle, 1998 MT 195, ¶ 18, 290 Mont. 287, ¶ 18, 963 P.2d 1255, ¶ 18 (citation omitted). The District Court determined that the officers entered the car to retrieve the keys, and we will not disturb that determination on appeal.

¶ Second, Weaselboy suggests that the drugs seized were not in plain view of the officers. However, based on the officers' testimonies, the District Court determined that the baggies were in plain view, and we will not disturb that determination on appeal. *Compare* State v. Ahmed (1996), 278 Mont. 200, 212, 924 P.2d 679, 686 (concluding "credibility of witnesses and the weight to be given to their testimony are to be determined by the trier of fact") (citations omitted). We note moreover that Weaselboy does not dispute that the "incriminating character" of the baggies was immediately apparent. *Loh*, 275 Mont. at 473, 914 P.2d at 600.

¶ We therefore address *Loh's* last requirement that "not only must the officer be lawfully located in a place from which the object can be plainly seen but he or she must also have a lawful right of access to the object itself." *Loh*, 275 Mont. at 473, 914 P.2d at 600. In the present case, we have already determined that Officer Walters was lawfully in the car. Having lawfully entered Weaselboy's car to retrieve the keys and move the car, Officer Walters had a lawful right of access to the contraband that was in plain view inside the car.

¶ We hold that the District Court did not err in concluding that the warrantless seizure of contraband from Weaselboy's car was justified under the plain view doctrine. Because this holding is dispositive, we do not address Weaselboy's arguments regarding the automotive exception.

¶ Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

No

**/S/ JIM REGNIER**

**/S/ TERRY N. TRIEWEILER**

**/S/ KARLA M. GRAY**