

DA 09-0245

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 48

STATE OF MONTANA,

         Plaintiff and Appellee,

    v.

JOSEPH DANIEL FELTZ,

         Defendant and Appellant.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DC 2008-067
Honorable David G. Rice, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Joslyn Hunt, Chief Appellate Defender, Helena, Montana

        For Appellee:

                Hon. Steve Bullock, Montana Attorney General, Mardell Ployhar,
Assistant Attorney General, Helena, Montana

                Gina Dahl, Hill County Attorney, Lindsay Osborne, Chief Deputy
Hill County Attorney, Havre, Montana

                Submitted on Briefs:  February 10, 2010

                              Decided:  March 16, 2010

Filed:

_____
                      Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Joseph Feltz appeals his conviction in the District Court for the Twelfth Judicial District, Hill County, of felony assault with a weapon. We reverse and remand for further proceedings consistent with this Opinion.

¶2    Feltz raises the following issue on appeal: Did the District Court err when it denied Feltz's request to instruct the jury on misdemeanor assault as a lesser included offense of felony assault with a weapon?

### Factual and Procedural Background

¶3    On the evening of June 16, 2008, Feltz was involved in an altercation with his girlfriend, Heather Green, and some of his neighbors at the Hacienda Trailer Court in Havre, Montana. Feltz and Green got into an argument outside of Feltz's trailer during which Feltz and Green were shoving, punching and kicking each other. Several witnesses also saw Feltz throw three unopened beer cans at Green. One of Feltz's neighbors, Ramona Champagne, attempted to break up the fight, but in the melee, Feltz hit her in the head. Another neighbor, Zona McConnell, tried to pull Feltz off of Champagne while Champagne's daughter, Jona Bear, hit and kicked Feltz. Champagne later received two stitches for a cut over her eyebrow.

¶4    Justin Doney, also a resident of the trailer court, testified at trial that he witnessed three women beating on Feltz. Doney stated that Green was choking Feltz while he was on the ground and that Green did not let go until Feltz was almost unconscious. Doney further stated that he broke up the fight by pulling the women off of Feltz. Doney also

testified that he saw Feltz grab a camouflage-handled knife out of his car and heard Feltz threaten to stab the people in the area. Doney later saw Feltz throw the knife in his car.

¶5 McConnell testified that she saw Feltz go over to his car, grab a knife out of it and head towards her and the others with the "blade out towards people." She also described it as a green camouflage knife. McConnell further testified that Feltz was swearing at them and calling them names, and that she was scared. McConnell said she called 911 and then threw her cell phone at Feltz and ran away.

¶6 Another neighbor, Wayne Hewitt, testified that Feltz was on the ground "and there was a whole bunch of ladies kicking him, beating him and stuff," and that Feltz was "[f]ighting for his life." Hewitt stated that after the parties separated, Feltz went to his car and attempted to drive away, but he hit a fence. Hewitt testified that he never saw a knife. Champagne and Bear also testified that they did not see Feltz with a knife.

¶7 Phillip Pipestem witnessed the altercation while he was waiting for a ride to a softball game. Pipestem testified that when Feltz approached him with the camouflage-handled knife, Pipestem threatened to beat Feltz with one of the baseball bats that Pipestem was carrying. Pipestem also testified that Feltz did not attempt to stab or cut anyone with the knife, and that, eventually, Feltz threw the camouflage knife in his car and pulled out a smaller knife.

¶8 Kenneth Erickson, the owner of the trailer court, testified that Doney called him and told him that he needed to get over there because they were "killing each other." Erickson and his cousin, Travis Burchard, jumped in their truck and headed to the scene. Erickson stated that when he arrived, Feltz "looked like he had the shit just kicked out of

3

him." Erickson testified that he saw Feltz grab a little black pocket knife and "barely" show it to the other people present. Erickson asked Feltz to give him the knife, and Feltz dropped it in his truck. Burchard testified that he also saw Feltz pull out a black pocket knife. He stated that Feltz just held the knife at his side; he did not waive it around or try to cut anyone.

¶9 Feltz testified in his own defense, stating that he had an argument with Green that turned physical when she threw a pop can at him. Although he admitted hitting and shoving Green, he described her as the aggressor. Feltz testified that he was trying to leave when he was jumped by Green, and that is when McConnell, Champagne, and Bear began beating him. Feltz claimed that he did become unconscious when Green choked him and that he awoke on the ground with the four women kicking and hitting him. Feltz admitted hitting Champagne in order to get her off of him. He claimed that he pulled out the pocket knife to get the women to back away from him and that he did not attempt to stab or cut them. He also explained that at one point he went to his car to get away, but after he drove into a fence, he decided he was too intoxicated to drive. Feltz also claimed that while he was still in his car, Green was smacking him through the driver's side window.

¶10 After the altercation, the police retrieved the small black folding pocket knife, but they did not find the camouflage-handled knife. Feltz was taken to the hospital in an ambulance. He suffered an abrasion, a scratch, and a small laceration, but did not have any severe injuries.

¶11 On June 18, 2008, Feltz was charged by Information with one count of felony assault with a weapon for allegedly causing bodily injury to Green by hitting her with a beer can, and one count of misdemeanor assault for hitting Champagne. On July 2, 2008, the State added a second charge of assault with a weapon for causing McConnell "reasonable apprehension of bodily injury" by threatening her with a knife.

¶12 A jury trial was held on January 14 and 15, 2009. During the settling of the jury instructions, the District Court allowed the State to amend the charge involving McConnell to allege that Feltz caused her a reasonable apprehension of *serious* bodily injury rather than merely bodily injury. In addition, with respect to the charge involving Green, the court instructed the jury on the lesser included offense of partner or family member assault, a misdemeanor. Feltz requested that the court also instruct the jury on the lesser included offense of misdemeanor assault with respect to the assault-with-a-weapon count involving McConnell, but the court refused to do so. The District Court did instruct the jury on the affirmative defense of justifiable use of force.

¶13 The jury returned a verdict of guilty on the charges of partner and family member assault, misdemeanor assault, and felony assault with a weapon. On the felony charge, the District Court designated Feltz a persistent felony offender and committed him to the Montana State Prison for ten years with five years suspended. The court imposed six month sentences on each of the misdemeanor offenses to run concurrent to Feltz's sentence on the felony offense. Feltz appeals his conviction arguing that the District Court erred in instructing the jury.

**Standard of Review**

¶14 The standard of review of a trial court's refusal to give an instruction on a lesser included offense is whether the trial court abused its discretion. *State v. Johnson*, 2008 MT 227, ¶ 12, 344 Mont. 313, 187 P.3d 662 (citing *State v. Flores,* 1998 MT 328, ¶ 40, 292 Mont. 255, 974 P.2d 124). District courts have broad discretion in formulating jury instructions; however, that discretion is ultimately restricted by the overriding principle that the jury instructions, taken as a whole, must fully and fairly instruct the jury regarding the applicable law. *State v. Azure*, 2008 MT 211, ¶ 13, 344 Mont. 188, 186 P.3d 1269 (citing *State v. Miller*, 2008 MT 106, ¶ 11, 342 Mont. 355, 181 P.3d 625).

**Discussion**

¶15 ***Did the District Court err when it denied Feltz's request to instruct the jury on misdemeanor assault as a lesser included offense of felony assault with a weapon?***

¶16 During the settling of the jury instructions, Feltz's counsel requested that the District Court instruct the jury that misdemeanor assault was a lesser included offense of felony assault with a weapon for the count involving McConnell. Counsel argued that the case came down to whether McConnell feared *serious* bodily injury or merely bodily injury, thus a lesser included offense instruction was appropriate. The District Court rejected Feltz's proposed jury instruction on misdemeanor assault.

¶17 An instruction on a lesser included offense "must be given when there is a proper request by one of the parties, and the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense," rather than the greater offense. Section 46-16-607(2), MCA; *see also State v. Martinosky*, 1999 MT 122, ¶ 18, 294 Mont. 427, 982 P.2d 440. Moreover, a defendant is entitled to a lesser included offense

6

instruction if two criteria are met: (1) the offense must constitute a lesser included offense as defined by § 46-1-202(9), MCA, and (2) there must be sufficient evidence to support an instruction on the lesser included offense. *State v. Cameron*, 2005 MT 32, ¶ 20, 326 Mont. 51, 106 P.3d 1189.

> The purpose of this rule is to ensure reliability in the fact-finding process. It avoids the situation where the jury, convinced that the defendant is guilty of some crime, although not necessarily the crime charged, convicts the defendant rather than let his action go unpunished simply because the only alternative was acquittal.

*State v. Castle*, 285 Mont. 363, 367, 948 P.2d 688, 690 (1997) (citing *State v. Gopher*, 194 Mont. 227, 230, 633 P.2d 1195, 1197-98 (1981)).

¶18 An included offense is one that "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Section 46-1-202(9)(a), MCA. "Facts" in this instance "refers to the statutory elements of the offenses, not the individual facts of the case." *State v. Matt*, 2005 MT 9, ¶ 13, 325 Mont. 340, 106 P.3d 530 (quoting *State v. Beavers*, 1999 MT 260, ¶ 30, 296 Mont. 340, 987 P.2d 371).

¶19 To be convicted of misdemeanor assault, a person must "purposely or knowingly" cause a "reasonable apprehension of bodily injury in another." Section 45-5-201(1)(d), MCA. To be convicted of felony assault with a weapon, a person must "purposely or knowingly" cause a "reasonable apprehension of *serious* bodily injury in another *by use of a weapon* or what reasonably appears to be a weapon." Section 45-5-213(1)(b), MCA (emphasis added). In addition, "bodily injury" means "physical pain, illness, or an

impairment of physical condition . . . ." Section 45-2-101(5), MCA. "Serious bodily injury," on the other hand, means bodily injury that

> (i) creates a substantial risk of death;
> (ii) causes serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ; or
> (iii) at the time of injury, can reasonably be expected to result in serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ.

Section 45-2-101(66)(a), MCA.

¶20 Thus felony assault with a weapon differs from misdemeanor assault only in the degree of the injury that is feared and the use of a weapon. There are no additional elements that must be proven in order to obtain a conviction for misdemeanor assault that are not included in the offense of felony assault with a weapon.

¶21 While the State concedes that misdemeanor assault qualifies as a lesser included offense of assault with a weapon, it argues that the District Court correctly denied the request for a lesser included offense instruction in this case because the evidence did not support it. Relying on this Court's decision in *State v. Reiner*, 179 Mont. 239, 587 P.2d 950 (1978), the State contends that an instruction on the lesser included offense of misdemeanor assault need not be given where the evidence indicates that the only type of injury that would be feared was serious bodily injury. *Reiner*, however, is distinguishable from the instant case.

¶22 In *Reiner*, the defendant, armed with a .357 Magnum revolver, not only threatened to kill the three individuals he thought were trespassing on the property he was caretaking, he fired two shots at the ground near where they were standing. On that

basis, the defendant was charged with three counts of aggravated assault pursuant to § 94-5-202(1)(c), RCM (1947).[1]  *Reiner*, 179 Mont. at 241-43, 587 P.2d 15 952-53. During trial, the defendant offered an instruction on the lesser included offense of assault, but the trial court refused his offered instruction and provided the jury with verdict forms that permitted a finding of either aggravated assault or not guilty.  *Reiner*, 179 Mont. at 251, 587 P.2d at 957.

¶23    We stated in *Reiner* that "the question of whether a bodily injury is 'serious' within the meaning of the criminal code definition is one of fact to be considered and determined by the jury."  *Reiner*, 179 Mont. at 252, 587 P.2d at 958 (citing *State v. Fuger*, 170 Mont. 442, 445, 554 P.2d 1338, 1340 (1976)).  However, we rejected the defendant's claim in *Reiner* that he was entitled to an instruction on the lesser included offense of assault because it was "clear that defendant put his victims in reasonable apprehension of *serious* bodily injury by *his menacing use of a .357 Magnum revolver*."  *Reiner*, 179 Mont. at 253, 587 P.2d at 958 (emphasis added).

¶24    Unlike *Reiner* where the defendant fired two shots near his victims and threatened to kill them, there was evidence that Feltz did not hold the knife in a "menacing" manner, nor did he try to stab or cut anyone with it.  Also, the difference in the type of weapon used in each case is significant.  Faced with a .357 Magnum revolver that the defendant had already fired twice, the victims in *Reiner* clearly had a reasonable apprehension of

---

[1]  The offense of aggravated assault was the precursor to the offense of assault with a weapon.  Section 94-5-202(1)(c), RCM (1947), regarding aggravated assault provided: "A person commits the offense of aggravated assault if he purposely or knowingly causes reasonable apprehension of serious bodily injury in another by use of a weapon."

*serious* bodily injury.  Whereas, in the instant case, depending on the fact-finders belief of the evidence presented regarding the type and size of knife used and the manner in which Feltz was holding that knife, a jury could conclude that McConnell only had a reasonable apprehension of bodily injury.

¶25    Nevertheless, the State contends that "a person who fears being injured with a knife would, at a minimum, apprehend 'serious permanent disfigurement,' and would likely apprehend, 'loss or impairment of the function or process of a bodily member or organ' and death."  Not so as the type of injury apprehended would depend on the size and type of knife used and the manner in which the knife was being held.  As noted earlier in this Opinion, "the question of whether a bodily injury is 'serious' within the meaning of the criminal code definition is one of fact to be considered and determined by the jury."  *Reiner*, 179 Mont. at 252, 587 P.2d at 958.

¶26    In this case, the court took the elements of *reasonable* apprehension and *serious* bodily injury out of the hands of the jury.  In addition, in denying Feltz's request for a lesser included offense instruction, the judge stated:

> It's my thought, there's a charge of assault by putting Zona McConnell in reasonable apprehension of serious bodily injury by a weapon.  She said she received no injury.  She was only in fear because of the weapon.  So the jury would decide if there was a weapon, and if there was a weapon *she was in reasonable apprehension of fear.*  If they don't, not guilty.  I don't see any evidence that assault would be a lessor [sic] offense, because there is no evidence of that. [Emphasis added.]

However, the fact that McConnell was afraid is not the question here.  The question is whether she was afraid of bodily injury or serious bodily injury.  There was no evidence

10

presented here that McConnell feared for her life. While she testified that she was scared, she did not testify that she feared permanent disfigurement or death.

¶27 Furthermore, the State's theory is inconsistent. On one hand the State concedes that assault is a lesser included offense of assault with a weapon and, on the other hand, the State maintains that if a weapon is used, assault cannot be a lesser included offense because the bodily injury feared would always be serious. Under this theory, the facts encompassing the event where the weapon was used would be irrelevant.

¶28 We conclude that there was evidence in the record to support a misdemeanor assault instruction in this case. Although Feltz admitted pulling a knife in self defense, the size and type of knife used, the way he held it, whether he displayed it prominently, and what he said while doing so were in dispute. The jury could have believed Feltz pulled out a small pocket knife, held it at his side with the blade down, and did not make threatening statements while doing so. Neither McConnell nor anyone else testified that Feltz told McConnell he would kill her or that he was going to cut or stab her. And McConnell did not testify that she feared for her life. In addition, neither of the other women with her, whom McConnell claimed were likewise threatened by Feltz, reported seeing a knife or hearing anything about a knife. They also did not report being threatened by Feltz.

¶29 Based on this testimony, we agree with Feltz that a rational jury could have concluded that McConnell was not actually in fear of serious bodily injury, or that such fear was not reasonable in light of the circumstances. Accordingly, we hold that the District Court erred in denying Feltz's request to instruct the jury on misdemeanor assault

11

as a lesser included offense of assault with a weapon, and we reverse and remand for a new trial.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE