DA 13-0406

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 142

KEVIN MARK TAYLOR,

        Petitioner and Appellant,

  v.

STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DV 10-628(b)
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Jacquelyn M. Hughes, Hughes Law, P.L.L.C., Billings, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

            John Parker, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  May 8, 2014
Decided:  June 3, 2014

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Kevin Mark Taylor (Taylor) appeals from an order of the Eighth Judicial District Court, Cascade County, denying his petition for postconviction relief. We affirm.

## ISSUE

¶2 We restate the following issue on appeal:

¶3 *Did the District Court err by denying Taylor's postconviction relief claims alleging that his trial counsel provided ineffective assistance of counsel?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Taylor worked under contract as a massage therapist for Peak Health and Wellness in Great Falls, Montana. On March 11, 2008, "Jane Doe" (Doe) contacted the Great Falls Police Department to report that Taylor had penetrated her vagina with his finger during a massage. Police Officer Keith Hedges (Hedges) took a statement from Doe and conferred with his supervisor regarding a rape exam for Doe. Hedges testified that his supervisor decided not to request the exam, in part because "we would not be finding bodily fluid such as semen inside of her." Doe testified that had Hedges suggested she undergo a rape exam, she would have done so. At trial the State did not produce any physical evidence of the crime and argued that there were valid reasons for not conducting the exam. Taylor's counsel, Jeff Olson (Olson), argued that the lack of a rape exam created reasonable doubt as to Taylor's guilt.

¶5 When Taylor was brought in for questioning, he requested that the detective take fingernail scrapings to establish his innocence. The detective told Taylor he was waiting for

the lab technician to bring the proper equipment, but the scrapings were never taken. Taylor was arrested immediately following the interview.

¶6 Taylor was charged with three counts, including a count of sexual intercourse without consent against Doe. Taylor pleaded not guilty to all counts. At trial, Taylor's counsel initially proposed a lesser included offense instruction of sexual assault. The State objected, arguing that the instruction would not be appropriate. The District Court and Olson agreed to revisit the matter after trial, at which point Olson withdrew the proposed instruction. He did not re-offer the instruction following the close of the evidence.

¶7 Taylor was convicted of sexual intercourse without consent, a felony, and sexual assault, a misdemeanor.[1] Taylor filed a direct appeal to this Court in *State v. Taylor*, 2010 MT 94, 356 Mont. 167, 231 P.3d 79, and we affirmed. We declined to address his claims of ineffective assistance of counsel (IAC), concluding that they were best suited for review in a postconviction proceeding.

¶8 On June 25, 2010, Taylor, acting as a self-represented litigant, filed a petition for postconviction relief in the District Court, raising numerous claims of IAC. Taylor subsequently obtained counsel who filed an amended petition citing additional authorities. After an evidentiary hearing, the District Court denied Taylor relief on all of his postconviction claims. Taylor timely appealed the District Court's April 25, 2013 order denying postconviction relief.

¶9 The claims relevant on appeal are that Olson was ineffective when he did not: (1) file a motion to dismiss the charge of sexual intercourse without consent on due process grounds

3

because the State failed to collect potentially exculpatory evidence through a rape exam of Doe and fingernail scrapings of Taylor, or request a jury instruction on spoliation and missing evidence; and (2) request a lesser included offense instruction.

## STANDARDS OF REVIEW

¶10    "We review a district court's denial of a petition for postconviction relief to determine whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct." *Miller v. State*, 2012 MT 131, ¶ 9, 365 Mont. 264, 280 P.3d 272 (internal quotation marks omitted; citation omitted). IAC claims present mixed questions of law and fact that we review de novo. *Miller*, ¶ 9 (citation omitted).

## DISCUSSION

¶11    *Did the District Court err by denying Taylor's postconviction relief claims alleging that his trial counsel provided ineffective assistance of counsel?*

¶12    We review IAC claims using the two-prong test defined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *State v. Godfrey*, 2009 MT 60, ¶ 14, 349 Mont. 335, 203 P.3d 834. The petitioner "must show that counsel's performance fell short of the range of competence required of attorneys in criminal cases and that his counsel's deficient performance was prejudicial to his case." *Godfrey*, ¶ 14 (internal quotation marks omitted; citation omitted). "We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *St. Germain v. State*, 2012 MT 86, ¶ 10, 364 Mont. 494, 279 P.3d 886 (citing *Whitlow v. State*, 2008 MT 140, ¶ 15, 343 Mont. 90, 183 P.3d 861) (internal quotation marks omitted). To overcome this presumption, the

---

[1]  The sexual assault conviction is not at issue in this proceeding.

petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." This Court then determines whether the identified acts or omissions were outside the wide range of professionally competent assistance in light of all the circumstances. *St. Germain*, ¶ 10 (citing *Whitlow*, ¶ 16) (internal quotation marks omitted). We make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from the counsel's perspective at the time." *St. Germain*, ¶ 10 (citing *Whitlow*, ¶ 15) (internal quotation marks omitted).

### I.    *Lack of a rape exam or fingernail scrapings*

¶13    We first address Taylor's argument regarding the failure of the police to conduct a rape exam of Doe and take fingernail scrapings from Taylor. Taylor argues that this evidence would have proved that penetration did not occur, and that "the destruction of evidence was clearly negligence on the part of Officer Hedges." Taylor contends the State "effectively den[ied Taylor] the ability to procure the evidence he clearly stated he needed to prove his innocence" by failing to take his fingernail scrapings and then arresting him without informing him that he had a right to obtain the scrapings at his own expense.

¶14    Taylor asserts that his lawyer should have either requested dismissal of the charges against him for the State's negligent destruction of evidence, or requested a jury instruction stating that the failure of the State to collect and preserve the subject evidence entitled the jury to infer that had such evidence been available at trial, it would have been exculpatory. Taylor argues that because his counsel did not move to dismiss or seek the subject instruction, he was ineffective. The State counters that the evidence could have been either

5

exculpatory or inculpatory, and maintains that police officers do not have an affirmative duty to collect potentially exculpatory evidence on a defendant's behalf. The State argues Taylor cannot establish a due process violation because the police officers did not act in bad faith.

¶15    "It is undisputed that a person accused of a criminal offense has a due process right to obtain existing exculpatory evidence." *State v. Minkoff*, 2002 MT 29, ¶ 9, 308 Mont. 248, 42 P.3d 223. Police officers have no duty to take initiative or even assist in procuring evidence on behalf of a defendant, *State v. Brown*, 1999 MT 133, ¶ 24, 294 Mont. 509, 982 P.2d 468 (citation omitted), "but they must avoid interference with the efforts on the part of the accused to obtain such evidence." *State v. Sadowski*, 247 Mont. 63, 79, 805 P.2d 537, 547 (1991), *overruled in part on other grounds*, *State v. Ayers*, 2003 MT 114, ¶¶ 74, 76, 315 Mont. 395, 68 P.3d 768. A defendant must show bad faith to prove a due process violation when lost evidence is only potentially exculpatory, rather than apparently exculpatory. *State v. Giddings*, 2009 MT 61, ¶ 48, 349 Mont. 347, 208 P.3d 363 (citing *Arizona v. Youngblood*, 488 U.S. 51, 57-58, 109 S. Ct. 333, 337 (1988)).

¶16    "The State's negligent suppression of evidence also may constitute a denial of a defendant's due process rights." *Giddings*, ¶ 52 (citation omitted). However, "[n]egligently suppressed evidence must be material and of substantial use, vital to the defense, and exculpatory in order to violate due process." *Giddings*, ¶ 52 (internal quotation marks omitted; citation omitted).

¶17    Because the police officers had no duty to gather exculpatory evidence, their decision not to conduct a rape exam of Doe did not violate Taylor's due process rights. The prospect that such an exam would have turned up material exculpatory evidence under the

6

circumstances of this case was in any event slight. The same is true with respect to the failure of the State to take fingernail scrapings from Taylor, especially in light of the fact that Taylor told the police officers he had washed his hands after the massage. Moreover, Taylor has not established that the officers impeded his ability to gather the fingernail scrapings evidence as the record does not reflect how long he was detained in custody after his arrest, nor does it show that by the time he was released it would have been futile to attempt collection of the scrapings on his own. *Sadowski*, 247 Mont. at 79, 805 P.2d at 547 (Police officers may not impede a defendant's ability to gather evidence.). "A petitioner in post-conviction relief proceedings has the burden to show by a preponderance of evidence that the facts justify relief." *Godfrey*, ¶ 13 (internal quotation marks omitted; citation omitted). Finally, it bears noting that where the "lost" evidence is only potentially exculpatory, as here, a defendant must show bad faith in order to prove a due process violation. *Giddings*, ¶ 48. The record contains no evidence of bad faith.

¶18 At trial, counsel capitalized on the lack of a rape exam by questioning the officers' decision not to conduct the test, and by arguing to the jury that the failure of the police to conduct a thorough investigation raised reasonable doubts as to Taylor's guilt. In light of these facts and the law with respect to exculpatory evidence, we conclude that the District Court did not err in determining that Olson was not ineffective for failing to request dismissal or the subject jury instruction.

II.    *Lesser included offense instruction*

¶19 We next turn to Taylor's argument that Olson acted unreasonably when he withdrew a proposed jury instruction on sexual assault as a lesser included offense. Taylor argues there

7

were facts in the record that would have supported such an instruction, namely his statement that he "might've brushed [Doe's breasts] with [his] pinky." The State counters that the evidence did not support a lesser included instruction because Taylor's theory, if believed, would have required acquittal.

¶20 To determine if a lesser included offense instruction should have been given at trial, we follow the two-step approach articulated in *State v. Castle*, 285 Mont. 363, 368, 948 P.2d 688, 690-91 (1997). We first determine if, as a matter of law, the offense for which the instruction is requested is a lesser included offense of the offense charged. We then determine if the lesser included instruction is supported by the evidence of the case. *State v. Jay*, 2013 MT 79, ¶ 39, 369 Mont. 332, 298 P.3d 396. "A lesser included offense is defined as an offense that is established by proof of the same or less than all the facts required to establish the commission of the offense charged." *Jay*, ¶ 40 (citing § 46-1-202(9)(a), MCA) (internal quotation marks omitted). Sexual assault qualifies as a lesser included offense of sexual intercourse without consent. *State v. Williams*, 2010 MT 58, ¶ 28, 355 Mont. 354, 228 P.3d 1127 (citation omitted).

¶21 Under the second step of *Castle*, a lesser included offense instruction must be given when "the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense." *Jay*, ¶ 42 (citing § 46-16-607(2), MCA; *Castle*, 285 Mont. at 369, 948 P.2d at 691). "A lesser-included offense instruction is not supported by the evidence when the defendant's evidence or theory, if believed, would require an acquittal." *Jay*, ¶¶ 42-44 (citations omitted) (Jay's theory that he had "lost consciousness" for a reason other than alcohol consumption required acquittal, not a lesser included instruction for driving

8

under the influence.); *State v. Grindheim*, 2004 MT 311, ¶ 41, 323 Mont. 519, 101 P.3d 267 (Grindheim's theory of the facts supported outright acquittal, not a conviction for the lesser included crime of endangering the welfare of a child.).

¶22   Taylor's statement that he "might've brushed [Doe's breasts] with [his] pinky" is not sufficient to support a conviction of sexual assault, which requires a person to "knowingly subject[] another person to any sexual contact without consent." Section 45-5-502(1), MCA. Notably, Taylor adamantly maintained his innocence both before and during trial. Olson testified at the postconviction hearing that his trial strategy was to deny the charges, and that he believed it would be inconsistent with this strategy to offer a lesser included instruction. He further testified that he initially proposed the instruction "[a]s a fall[]back," in case Taylor's story changed during trial. When that did not happen, he withdrew the instruction. This was a legally sound and legitimate tactical decision in light of Taylor's insistence that he was innocent. *See State v. Leyba*, 276 Mont. 45, 50, 915 P.2d 794, 797 (1996) (Counsel's trial strategy of seeking absolute acquittal ultimately was not successful, but it did not constitute deficient performance.), *overruled in part on other grounds*, *Whitlow*, ¶¶ 13, 20. Because Taylor's theory, if believed, would require an acquittal, a lesser included instruction for sexual assault was arguably not appropriate. Therefore, the District Court did not err in determining that Olson was not ineffective when he withdrew the lesser included instruction.

**CONCLUSION**

¶23   For the foregoing reasons, we conclude that Taylor has failed to rebut the strong presumption that his counsel's conduct fell within the wide range of reasonable professional

9

assistance. *St. Germain*, ¶ 10. Therefore, we affirm the District Court's denial of Taylor's petition for postconviction relief.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE